[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff and the defendant, whose maiden name is Mary Ellen Levasseur, were married on April 16, 1966 at Bethel, Connecticut. The plaintiff has resided continuously in the State of Connecticut for at least twelve (12) months immediately prior to the date of the filing of the complaint. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are no minor children issue of the marriage, and the defendant does not presently have any minor children. The State of Connecticut has not contributed to the support of either of the parties. The court finds the following additional facts.
The plaintiff is fifty-two (52) years old, and the defendant is fifty (50) years old. The parties have two adult children: a son, Michael Da Cruz, age twenty-seven (27); and a daughter, Stacey, age twenty-five (25), who is married and lives in Rhode Island. The plaintiff's health is generally good. In 1993, he was hospitalized for stress and chest pains. He has had a foot problem in the last nine months due to a heel bone having separated. The defendant was involved in a motor vehicle accident in 1979, which resulted in five vertebrae being dislocated, together with a pinched nerve in her spine. In 1981, she tore ligaments in her left ankle and was in a cast for nine weeks. She was employed at that time by Grolier, Inc. and was out of work for nine months due to the accident. A few years later, she suffered a hairline fracture of her left hip when lifting a mail tray. In 1993, she tore ligaments in her right ankle. She is unable to stand on her feet for a lengthy period of time.
Each party has a high school education. When the parties married, the plaintiff was employed by his father at Danbury CT Page 14200 Plastics. He had worked there for seven years prior to the marriage. He continued working there for eleven years after the marriage before leaving in 1977, when he became employed by Charles Batchelder Company in Newtown, Connecticut. He was employed by Charles Batchelder Company from 1977 to 1984 when he purchased Danbury Plastics, Inc. from his father for $75,000 and returned to work for the company.
When the parties married, the defendant was employed by American Radionics. She continued that employment for two years after their marriage. She then went to work for National Semi-Conductor for a period of approximately fifteen (15) months. She left that employment when their son was born. After their daughter was born and had entered kindergarten, she returned to work at Danbury Plastics on a part-time basis. When the plaintiff left employment at Danbury Plastics in 1977, the defendant went to work for National Semi-Conductor. She was then employed by Grolier, Inc. between 1979 and 1990. Her employment at Grolier commenced at four and one-half hours daily, then increased to six hours daily, five days per week. She was employed by Danbury Plastics in 1990 as a supervisor, and continued working there until 1994. After the defendant left her employment at Danbury plastics in 1994, she received unemployment compensation from June of 1994 until November of 1994. She has attempted to find work since June of 1994 and has held a number of temporary positions since June, 1994. She was employed in January of 1995 for one day. She was then employed between March and September of 1995 earning a gross weekly pay of $300, together with some overtime. She then was employed as a customer service representative for three days. She then was employed for some other temporary positions. She presently has a job that is on a day-by-day basis. She has unsuccessfully sought employment on a full-time basis at a number of places.
When the parties married, the plaintiff owned a 1964 Ford. He had completed the purchase of a home on March 18, 1966 that was in his name only. The purchase price of the home including extras was $18,771.80. It was financed, in part, through a first mortgage of $14,500, with the balance being paid in cash of $4,271.80. The down payment on the home was contributed in approximate equal amounts by each party. The plaintiff subsequently transferred to the defendant a one-half interest in that home. That home was subsequently sold, and the parties received net proceeds from that sale in July of 1973 of $19,759. Those net proceeds were used for the closing of the present home CT Page 14201 that they own that was also purchased in July of 1973. The present home has a fair market value of $180,000 with a first mortgage of $3,784.86, and a home equity second mortgage of $47,591.90, with a net equity of $128,623.24. The home equity loan was used primarily to pay for the cost of college for the children and, in part, for renovations of the family home. The plaintiff is the president and sole stockholder of Danbury Plastics, Inc. The court finds that the fair market value of that corporation is $154,825. He has a gross weekly pay of $1200, with a net weekly pay of $751.99. He also has some minor income from a soda machine at his place of employment averaging $19.46 monthly. He has all of his transportation expenses paid for by the corporation. He has a checking account with a balance of $49.60 and a savings account with a balance of $464.75. He owns shares of stock in the Oppenheimer Fund with a total value of $2,553.48. He also has furnishings valued at $1000 at the apartment he occupies and sporting equipment and jewelry with a value of $3000. He has a cash surrender value with one life insurance policy through Mass. Mutual of $3,531.11, and a second policy with Mass. Mutual with a cash surrender value of $3,004.78. He has liabilities with the Household Bank VISA with a balance of $2,886.43, Colonial Bank VISA with a balance of $5,734.47, and to his parents of $15,000 for funds advanced for his legal fees. The defendant owns a 1991 Mitsubishi with fair market value of $5000. She has $32 in her Eagle Federal checking account and $1,436.07 in her Eagle Federal savings account. The furniture and furnishings at the family home have an approximate value of $12,000. The parties have an agreement that the plaintiff would retain all of those furnishings except for the plaintiff's personal records, tools, anniversary clock and a set of china from Portugal given to him by his parents. The defendant also has a Mass. Mutual IRA with a value of $3,015.43 and miscellaneous jewelry with a value of $4000. The cost of health insurance for the defendant will be $211.19 after the parties are divorced. The cost for health insurance for the plaintiff after the divorce will be a total of $216.39 monthly, with Danbury Plastics, Inc. paying one-half of that cost for him.
The court has considered the provisions of § 46b-82 regarding the issues of alimony, and has considered the provisions of § 46b-81(c) regarding the issues of property division, and has considered the provisions of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders.
ORDERS
CT Page 14202
I. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
II. BY WAY OF ALIMONY
1. The plaintiff is ordered to pay to the defendant alimony in the sum of $375 per week. Alimony is to terminate on the earliest of the following events: (a) the death of the plaintiff; (b) the death of the defendant; (c) the remarriage of the defendant.
2. The provisions of § 46b-86(a) and § 46b-86(b) are applicable.
3. The plaintiff is to cooperate in making available to the defendant health insurance under COBRA for the maximum period allowed by law. The defendant is to be solely responsible for paying that cost.
4. The plaintiff is to name the defendant as irrevocable beneficiary under his Mass. Mutual policy, number 7645392, which is presently in the face amount of $190,904. He is to annually provide to her written proof that said policy is in full force and effect with her named as beneficiary commencing one year from the date this decision is filed and annually thereafter. He is to maintain that coverage for her for so long as there is an outstanding alimony obligation. The amount of the coverage may be reduced by $10,000 dollars per year commencing one year from today's date and annually thereafter.
III. BY WAY OF PROPERTY ORDERS
1. The court orders that the plaintiff transfer to the defendant by January 23, 1996 all of his right, title and interest in the family home located at Three Regen Road, Danbury, Connecticut. The defendant is to pay the first mortgage and hold the plaintiff harmless therefrom. The plaintiff is to make payments on the home equity loan so as to reduce the balance due on the home equity loan to $37,000. After he has reduced the home equity loan to $37,000, the defendant is then to make the payments on the balance of $37,000 and hold the plaintiff harmless therefrom. CT Page 14203
2. The Fleet checking account and Fleet savings account shown on the plaintiff's financial affidavit is awarded to the plaintiff.
3. The Oppenheimer Funds shown on the plaintiff's financial affidavit is to be divided equally between the parties.
4. The plaintiff is awarded all of the right, title and interest that he has in Danbury Plastics, Inc.
5. All furnishings at the plaintiff's apartment, together with all of his sporting equipment and jewelry, is awarded to the plaintiff.
6. All liabilities shown on the plaintiff's financial affidavit are to be paid by the plaintiff and he is to hold the defendant harmless therefrom.
7. The 1991 Mitsubishi is awarded to the defendant.
8. The Eagle Federal savings account and Eagle Federal checking account shown on the defendant's financial affidavit is awarded to the defendant.
9. All furniture and furnishings at the family home are awarded to the defendant except for the plaintiff's personal records, tools, anniversary clock and the set of china given to him by his parents. He is to remove those items within thirty (30) days from today's date.
10. The Mass. Mutual IRA shown on the defendant's financial affidavit, as well as her miscellaneous jewelry, are all awarded to the defendant.
11. The defendant is to pay all liability shown on her financial affidavit and hold the plaintiff harmless therefrom.
12. In the event the defendant sells the family residence prior to the time the plaintiff has reduced the home equity loan to $37,000, then the difference between the balance due on the home equity loan and the $37,000 shall be immediately due and payable by the plaintiff to the defendant.
13. The plaintiff is to pay to the defendant, one-half of the CT Page 14204 cash surrender value of each of the two Mass. Mutual policies by January 23, 1996.
IV. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party.
V. MISCELLANEOUS ORDERS
1. The counsel for the plaintiff is ordered to prepare the judgment file within thirty (30) days and send it to counsel for the defendant for signature and filing.
2. Each party is to provide to the other a copy of their federal and state income tax returns by registered mail, return receipt or certified mail, return receipt within fifteen (15) days from the time such returns have been filed. This order is to remain in effect for so long as there is an outstanding alimony obligation. In addition, the plaintiff is to provide to the defendant a copy of the corporate tax return for Danbury Plastics, Inc., commencing with the tax return that is due in April of 1996. This obligation shall also remain in effect for so long as there is an outstanding alimony order.
Axelrod, J.